Filed 7/15/13  In re Jazmine B. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re JAZMINE B., a Person Coming Under the Juvenile Court Law. | |
| FRESNO COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. DARRYL B., Defendant and Appellant. | F066409 (Super. Ct. No. 09CEJ300105) **OPINION** |

### THE COURT[*]

APPEAL from an order of the Superior Court of Fresno County.  Mary Dolas, Commissioner.

Konrad S. Lee, under appointment by the Court of Appeal, for Defendant and Appellant.

---

[*] Before Gomes, Acting P.J., Franson, J. and Peña, J.

Kevin Briggs, County Counsel, and William G. Smith, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

Darryl B. (father), who is incarcerated in federal prison, appeals from a juvenile court exit order terminating dependency jurisdiction over his nearly three-year-old daughter, Jazmine, pursuant to Welfare and Institutions Code section 362.4,[1] awarding sole physical and legal custody of Jazmine to her mother, and denying him any contact with Jazmine. He contends the juvenile court abused its discretion in issuing the no contact order. We disagree and affirm the juvenile court's order.

## FACTUAL AND PROCEDURAL HISTORY

The family's history is known to this court. In a prior non-published opinion, we affirmed the juvenile court's order, made at the six-month review hearing, giving father twice yearly visitation with Jazmine. (*In re Jazmine B.* (May 22, 2013, F065372.)) Since this appeal challenges the juvenile court's visitation order made in conjunction with termination of dependency jurisdiction, a summary will suffice.

*Prior Proceedings*

Father, his wife Angelina B. (mother) and their then 19-month-old daughter Jazmine, came to the attention of the Fresno County Department of Children and Family Services (Department) in June 2011, when mother sought help from a women's shelter due to domestic violence. At the time, mother was living with father and Jazmine in Fresno. Mother, who had scars around her eyes that appeared to be a week old and bruises on both arms, said she was fearful of father, who she described as being "very threatening" in appearance. Mother claimed that father both physically and sexually assaulted her. Mother was told to return to the shelter the next day, as there was no room for her.

---

[1] All statutory references are to the Welfare and Institutions Code.

In the following weeks the Department helped mother and Jazmine move from their home into the women's shelter. Once there, mother filed for divorce and obtained a temporary restraining order against father. While father was to be evicted from the home, he refused to leave; he said he had a medical marijuana card and needed to stay at the home to guard his marijuana plants. He denied having a substance abuse problem or mental illness, and claimed mother was the perpetrator of domestic violence, sometimes in front of Jazmine.

Following a team decision meeting, the Department filed a petition alleging Jazmine came within the provisions of section 300, subdivision (b), based on father's substance abuse and the domestic violence between mother and father. A permanent restraining order issued on July 13, 2011, which prohibited father from contacting mother and ordered him to move out of the family's home within 10 days. Mother and Jazmine, who remained in mother's care, moved back into the home the same day. Father was arrested when mother called police after he came to the home intoxicated. Two days later, father was arrested again after he was found living in a small shed behind the family home.

In November 2011, the juvenile court found true amended allegations of the petition pertaining only to the domestic violence allegations. At the dispositional hearing held the following month, the juvenile court ordered Jazmine remain placed with mother with the provision of family maintenance services, removed Jazmine from father's custody, and gave father reunification services, including reasonable supervised visitation.

Father, who had been in and out of custody at the Fresno County jail since July 2011, was arrested on federal weapons charges on January 23, 2012. By this time, there were two restraining orders keeping father away from mother; the first was to expire on July 13, 2014 and the second on November 19, 2014. According to mother, father wrote

3.

her letters from jail in violation of the restraining orders; mother promptly reported the letters to police.

While Jazmine was healthy and developmentally on target, she was not talking. At the Department's request, the Central Valley Regional Center (CVRC) assessed Jazmine and determined she was eligible for early intervention services due to a significant expressive language delay. As of February 2012, Jazmine was receiving services for her speech delay at Exceptional Parents Unlimited (EPU), and was to begin speech therapy. Mother, who had been diagnosed with schizophrenia, was seeing a psychiatrist to manage her symptoms and medication.

A six-month review hearing was held in June 2012. The Department recommended mother continue to receive family maintenance services, and father's reunification services and visitation be terminated. By March 2012, father had been transferred to the Lerdo Federal Holding Facility in Bakersfield. He had continued to contact mother via letters, in violation of the restraining orders. Mother reported all instances of contact to the police. Prior to his arrest, father had not made substantial progress on his reunification services.

Father's visits had not been scheduled because he failed to maintain contact with the Department, presumably because he was in and out of custody. Although the juvenile court ordered the Department in February 2012 to follow up on visits after father requested them while in custody at the Fresno County jail, the Department did not do so due to father's transfer to Lerdo. In recommending termination of visitation, the Department asserted visitation would be detrimental to Jazmine's emotional well-being because: she had not seen father since July 2011; she would need to be transported to Bakersfield by Department drivers she did not know since mother could not facilitate visits; and visits would not support Jazmine's emotional well-being given her young age, her lack of a current relationship with father, the long transport to Bakersfield by unknown persons, and the prison environment.

At the review hearing, father's attorney objected to termination of visitation and asked the court to order visits, as father was very interested in seeing Jazmine and was concerned he would have no idea if she was okay or what was happening to her without visits. At the very least, father wanted to receive information as to how she was doing and her general well-being. County counsel agreed the Department could provide father with information about Jazmine, but objected to visitation.

The juvenile court continued dependency jurisdiction and family maintenance services for mother, but terminated father's reunification services. The court found the Department had not shown any detriment as to visits between father and Jazmine, and ordered twice yearly supervised visits. The court explained that mother could accompany any driver to father's facility and, while she could not enter the facility with Jazmine, father was entitled to visits and did not lose that right because he was incarcerated. The court noted there were no specifics as to any detriment Jazmine would suffer. The court set a family maintenance review hearing for September 12, 2012. The court further ordered that father be provided any photos and updated information once per year.

*The September 2012 Review Hearing*

In a report prepared for the review hearing, the Department recommended that the juvenile court terminate dependency, award mother full legal and physical custody of Jazmine, and enter a no contact order between father and Jazmine. Mother had completed her court ordered services and continued to participate in services at the women's shelter. Jazmine and mother were also receiving services through EPU. Mother continued to see a psychiatrist and was taking medication for her mental illness. Home visits took place in June, July and August 2012; the home was found to meet minimum standards and had adequate food, and Jazmine was observed to be clean, well cared for and comfortable in mother's care. Father, who was still in custody at Lerdo, was scheduled to be sentenced on September 17, 2012. He continued to contact mother

via written letters, in violation of the restraining orders. Mother reported all instances of father's contact to police.

The social worker reported that mother did not want Jazmine to visit father and noted the existence of the two restraining orders still in effect. Mother was concerned that father was delusional, as he believed them to still be a family, and that he did not obey the restraining orders. Mother had over 20 event cards from the Fresno Police Department documenting his harassment of her, and had shown the social worker letters that he either sent directly to her home or gave to family members who then delivered them to mother. Copies of the letters were attached to the report. Mother did not feel it was safe for father to be around Jazmine, as he had physically abused mother both while she was pregnant and while she was holding Jazmine after her birth.

The social worker opined it was not in Jazmine's best interest to have contact with father and visits would be detrimental to her. The social worker explained that Jazmine had a strong relationship with mother, who she looked to for care and comfort, and who had been Jazmine's primary caregiver for over a year. Mother never left Jazmine with anyone else. Jazmine had not visited father in over a year and did not respond when asked about him. Mother claimed that when she showed Jazmine a picture of father, Jazmine got "upset and clingy." Mother, who had reported that father physically and mentally abused her, did not feel safe around father and would cry when discussing "this subject." The social worker noted mother was unable to take Jazmine to visit father and mother could not identify anyone else with whom Jazmine felt comfortable who could take her to visit father.

The social worker had been assigned to the case only recently and had just started to develop a relationship with Jazmine. The social worker believed it would be traumatizing for Jazmine to be forced to travel to a prison environment with someone with whom she did not feel comfortable, to visit a man she had not seen in over a year. The social worker opined it would be detrimental to Jazmine to participate in such a visit

without mother's comfort. The social worker was also concerned about the effect visits would have on mother's mental health, as mother was "stressed out" with the thought of Jazmine having contact with father and even the discussion of visits distressed her.

Father had a mental health assessment in January 2012, in which he denied any physical or emotional abuse toward mother and Jazmine. The therapist stated in the assessment report that father minimized his behaviors and took no responsibility for his involvement with the Department. The therapist also noted that father made hostile statements about mother during the assessment. Based on the assessment, the Department recommended no visits occur until father could take responsibility for his actions, and get some treatment and therapy.

An Individualized Family Service Plan (IFSP) was completed by Fresno County Early Start in May 2012. The IFSP revealed that mother was concerned about Jazmine's inability to effectively express her needs and wants. Although Jazmine had shown growth in almost all developmental areas, she still showed delay in expressive language and could only say seven to ten words. The goal for Jazmine was to able to say or sign up to 20 words to express her needs in her daily routine. According to an October 1, 2012, report completed by Fresno Child Advocates, mother reported that, after therapy through EPU, Jazmine could say approximately 20 words.

The review hearing was continued twice and ultimately held on October 22, 2012. By that hearing, father was an inmate at the Federal Correctional Institution in Pekin, Illinois. Mother and the social worker met in mediation before the hearing to develop a child custody order. Father did not appear due to his incarceration. The mediation resulted in the following parenting plan, namely that mother be given sole legal and physical custody of Jazmine, and father be denied visitation pending further order of the court.

At the October 22 review hearing, the Department, and the attorneys for mother and Jazmine, all submitted on the social worker's report. Father's counsel asked the

court to continue the current order of twice yearly visitation with letter and picture contact, and objected to mother receiving sole physical and legal custody of Jazmine. Father's counsel understood the concern regarding visitation was the fact that father was out of state, and stated that father's "primary concern" was that he would lose contact with Jazmine and not be provided with information about how she was doing. Father wanted to know that Jazmine was "growing up well" and to be able to have phone or other type of contact with her while he was in custody; accordingly, father objected to the court not ordering any type of communication or contact. Father's counsel confirmed a relative was available to whom mother could provide information regarding Jazmine; the relative was told she would not be able to contact mother directly due to the restraining order. Noting there was no restraining order as to Jazmine, counsel stated father was hoping to be able to have some communication regarding Jazmine facilitated.

The juvenile court adopted the mediated custody and visitation order based on father's incarceration and the two restraining orders. The court ordered sole legal and physical custody be granted to mother, and that there be no visits or contact between father and Jazmine until further order of the court. The court noted that while mother was the protected person, there had been minimal contact between Jazmine and father due to Jazmine's age, the fact she had been in mother's custody, and father's incarceration. The court stated that father could try to obtain a custody or visitation order on his release from custody. The court terminated dependency jurisdiction.

## DISCUSSION

Father challenges only the trial court's order denying him any contact with Jazmine. Pursuant to section 362.4, "[w]hen a juvenile court terminates its jurisdiction over a dependent child, it is empowered to make 'exit orders' regarding custody and visitation. [Citations.] Such orders become part of any family court proceeding concerning the same child and will remain in effect until they are terminated or modified by the family court." (*In re T.H.* (2010) 190 Cal.App.4th 1119, 1122-1123.)

When deciding custody and visitation in any dependency case, the juvenile court's primary consideration must always be the best interests of the child. (*In re Chantal S.* (1996) 13 Cal.4th 196, 206 (*Chantal S.*); *In re Nicholas H.* (2003) 112 Cal.App.4th 251, 268 (*Nicholas H.*); *In re Jennifer R.* (1993) 14 Cal.App.4th 704, 712 (*Jennifer R.*).) The juvenile court is not restrained by "any preferences or presumptions" in fashioning "exit orders" pursuant to section 362.4, therefore no specific finding is required to restrict visitation. (*Jennifer R.*, *supra*, 14 Cal.App.4th at pp. 712; *Nicholas H.*, *supra*, 112 Cal.App.4th at p. 268.) Instead, the court must be guided by the totality of the circumstances and issue orders that are in the child's best interests. (*Chantal S.*, *supra*, 13 Cal.4th at p. 201; *In re Roger S.* (1992) 4 Cal.App.4th 25, 30-31.)

We review the juvenile court's custody and visitation orders for abuse of discretion. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318 (*Stephanie M.*); *Bridget A. v. Superior Court* (2007) 148 Cal.App.4th 285, 300; *In re Emmanuel R.* (2001) 94 Cal.App.4th 452, 465.) A court abuses its discretion when it exceeds the bounds of reason by making a decision that is arbitrary, capricious or patently absurd. (*Stephanie M.*, *supra*, 7 Cal.4th at p. 318.) Under the abuse of discretion standard, when two or more inferences reasonably can be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court. (*Ibid.*)

On appeal, father contends the juvenile court abused its discretion when it denied him any contact with Jazmine because, between June 2012, when the juvenile court ordered twice yearly jail visits after finding the Department failed to show such visits were detrimental to Jazmine, and the October 22, 2012 review hearing when it denied contact, the parties' circumstances had not changed materially. Father reasons that because there was no change in circumstances, there was not substantial evidence to support the "notion" it was detrimental to Jazmine for him to have some contact with her during his incarceration.

9.

We disagree. Contrary to father's assertion, the parties' circumstances had changed materially between the review hearings in at least two respects, namely that father was no longer incarcerated in Bakersfield but instead was incarcerated in Illinois, and dependency jurisdiction was being terminated. Due to those changed circumstances, in order for in person visits to occur, mother, and not the Department, would have to transport Jazmine thousands of miles away to visit father in Illinois. Given father's location in Illinois, the existence of the restraining orders, and the fact that nearly three-year-old Jazmine had no relationship or bond with father, the juvenile court reasonably could find that it would not be in Jazmine's best interest to order in person visits with father.

The juvenile court also reasonably could find that the other contact father requested, namely telephone or letter contact, would not be in Jazmine's best interest. Jazmine presumably could not read and her expressive language was extremely limited, so telephone or letter contact would need to be facilitated by an adult. The adult would have to read father's letters to Jazmine and place or receive father's telephone calls. Mother could not facilitate such contact due to the restraining orders and, given dismissal of dependency jurisdiction, the Department would not be involved. While father's attorney did offer to have a relative receive information regarding Jazmine, the juvenile court reasonably could conclude it would not be in Jazmine's best interest to make such an order because there was no evidence Jazmine had a relationship with that relative, and Jazmine could not actively participate in such visits, for example by writing her own letter to father or speaking to him on the telephone, due to her lack of relationship with father and limited ability to speak.

Father's argument assumes that, when the juvenile court issued its exit orders, it could not change the existing visitation order unless substantial evidence supported the change. We have found no support for this proposition. Section 362.4, which authorizes the issuance of exit orders, does not require the juvenile court to continue existing

10.

visitation orders or to change existing orders upon only a certain evidentiary showing. It also does not require the court to issue specific visitation orders. Consequently, the court may issue new visitation orders consistent with the child's best interest. (See *In re Hirenia C.* (1993) 18 Cal.App.4th 504, 518-520.) Furthermore, section 362.4 does not require a finding of detriment to deny visitation in the exit orders.

Here, the juvenile court exercised its discretion, guided by the best interests of the child, in determining whether to permit contact between father and Jazmine. Under these circumstances, we cannot say the juvenile court abused its discretion in denying such contact.

## **DISPOSITION**

The juvenile court's exit orders are affirmed.